**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PATRICIA STREET,

    Plaintiff,

v.                                                           Case No: 8:15-cv-388-T-24 MAP

AETNA LIFE INSURANCE
COMPANY and FEDERAL
EXPRESS CORPORATION,

    Defendants.

_____

**ORDER**

This cause comes before the Court on Defendants', Aetna Life Insurance Company ("Aetna") and Federal Express Corporation ("FedEx"), Motion for Summary Judgment (Dkt. 37), to which Plaintiff, Patricia Street, has filed a response in opposition (Dkt. 46).[1]  For the reasons stated herein, the Court GRANTS summary judgment in favor of Defendants.

**I.**    **SUMMARY JUDGMENT STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray,* 461 F.3d 1315,

---

[1] Plaintiff failed to timely file a response to the motion for summary judgment.  The Court entered an order to show cause as to why the Court should not consider the motion for summary judgment to be unopposed. Plaintiff responded that she misunderstood the deadlines imposed by the Local Rules. (Plaintiff also failed to timely file a response to Defendants' motion for protective order).  Plaintiff filed her response, which failed to comply with the Local Rules.  The Court struck the response and Plaintiff submitted a response that she contends is in accordance with the Local Rules.  Before practicing in this Court again, it would best serve counsel for Plaintiff if she reviewed the Local Rules (and the Federal Rules of Civil Procedure) and that she act in accordance with the applicable rules.

1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (citation omitted).

When the deferential standard of review applies, evidence is rarely taken and the usual tests for summary judgment, such as whether genuine issues of material fact exist, do not apply. *Curran v. Kemper Nat. Servs., Inc.*, No. 04–14097, 2005 WL 894840, at *7 (11th Cir. March 16, 2005) ("In an ERISA benefit denial case ... in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."); *see Providence v. Hartford Life & Acc. Ins. Co.*, 357 F. Supp. 2d 1341, 1342 (M.D. Fla. 2005); *Garrett v. Prudential Ins. Co. of Am.*, 107 F. Supp. 3d 1255, 1264 (M.D. Fla. 2015).

## II.   BACKGROUND

### A.   The Long-Term Disability Plan

Plaintiff was insured under the employee welfare benefit plan known as The Federal Express Corporation Long Term Disability Plan, which provides for the funding and payment of long-term disability benefits to employees that are covered under the Plan. Dkt. 24-10 at 29; AR 01884. FedEx is the Plan administrator and Aetna is the Claims Paying Administrator of the Plan. The Plan gives Aetna, as the Claims Paying Administrator, "sole and exclusive discretion . . . with respect to all matters … relating to the eligibility of a claimant for benefits under the Plan." Dkt. 24-10 at 3. Further, "[t]he determination of the Claims Paying Administrator shall be made in a

fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the individual's or committee's decision was arbitrary and capricious." *Id.* at 3-4.

If an eligible FedEx employee becomes "Disabled" as defined by the Plan, then the employee "shall be entitled" to receive Long-Term Disability ("LTD") benefits. Dkt. 24-10 at 47. The employee shall be paid a monthly disability benefit that is equal to 60% of that covered employee's monthly income. *Id.* The Plan provides the following definition for "Disabled":

> Disability or Disabled shall mean either an Occupational Disability or a Total Disability; provided, however, that a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner **and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms**. In the absence of significant objective findings, conflicts with managers, shifts and/or work place setting will not be factors supporting Disability under the Plan.

Dkt. 24-10 at 33-34.

An employee is an "Eligible Employee" if she is "an Employee who is engaged in a Permanent Full-Time Employment…." Dkt. 24-10 at 34. However, an employee that is "classified as casual, temporary, permanent part-time . . . or who is on a personal family (other than a family leave for his own illness or injury), unapproved disability or other leave of absence . . . shall not be an Eligible Employee." *Id.* at 34-35.

In order to prove a qualifying disability, the employee or the employee's health care professional must provide proof that the employee is disabled, based on significant objective findings, such as: (1) medical examination findings; (2) test results; (3) X-ray results; and/or (4) observation of anatomical, physiological or psychological abnormalities. Pain alone is not proof

3

of a disability.

If a covered employee suffers from an Occupational Disability, the Plan provides long-term benefits equal to 60% of the employee's monthly income for up to two years. An "Occupational Disability" means "the inability of a Covered Employee, because of a medically-determinable physical or functional impairment . . . to perform the duties of his regular occupation." Dkt. 24-10 at 37-38.

In order to receive LTD benefits for more than two years under the Plan, a Covered Employee must be Totally Disabled. A "Total Disability" means "the complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment . . . to engage in any compensable employment for twenty-five hours per week." *Id.* at 41.

Coverage under the Plan automatically terminates under a number of scenarios, including the date an employee ceases to meet the definition of an Eligible Employee. *Id.* at 44.

### B. Plaintiff's Employment and Medical History

Plaintiff worked as a Senior Business Systems Advisor at FedEx. Dkt. 24-2 at 7. Plaintiff was given Short-Term Disability benefits from March 28, 2011 to September 25, 2011 when she suffered an intrailac thromboembolism, which resulted in Plaintiff not being able to work in her normal position at FedEx. *Id.* at 1. Plaintiff also suffered from other ailments, including emphysema, hypertension, chronic obstructive pulmonary disease ("COPD") and complained of weakness and numbness in her thighs. Dkt. 24-1 at 2. Plaintiff then received LTD benefits under the Plan from September 26, 2011 to September 25, 2013. Dkt. 24-2 at 1. Because Plaintiff had received LTD benefits for the maximum of two years, she needed to qualify as having a Total Disability in order to continue to receive LTD benefits. On September 26, 2013, Plaintiff was denied LTD benefits because there was "a lack of significant objective findings to substantiate a

claim under the Plan for Total Disability," *i.e.,* she was unable to engage in any compensable employment for a minimum of 25 hours per week. Dkt. 24-1 at 1.

In denying her claim, Defendants point to Dr. Leonard Cosmo's in-person medical examination of Plaintiff, his September 25, 2013 report regarding that examination, and his review of her medical records. Dkt. 37-1, ¶¶ 17, 18; Dkt. 24-2 at 249-257. On September 10, 2013, Dr. Cosmo reviewed Plaintiff's medical files for two hours and conducted a one hour medical examination of Plaintiff. Dr. Cosmo laid out Plaintiff's medical history and then-current medical complaints. Dkt. 24-2 at 249-253. Dr. Cosmo concluded that there was evidence of multiple chronic conditions that had been addressed with medication or surgical intervention. *Id.* at 253. Dr. Cosmo stated that Plaintiff "would be appropriate for a sedentary level of work but not greater than sedentary…." *Id.* According to Dr. Cosmo, Plaintiff should have been able to sit eight hours a day, stand less than 30 minutes, walk less than 30 minutes, and carry up to 10 pounds occasionally. *Id.* at 253-254. However, Plaintiff was to avoid working with heavy machinery or at unprotected heights due to her clotting disorder and the risk of bleeding. *Id.* at 254.

Defendants also point to the peer review conducted by Dr. Wendy Weinstein, who conducted a review of Plaintiff's medical records. Dkt. 24-2 at 122-129. Dr. Weinstein found that the following ailments would not preclude Plaintiff from performing the job duties of any occupation for twenty-five hours per week:

(1) Plaintiff's pulmonary history, including COPD and emphysema;

(2) Plaintiff's history of hypercoagulable state (Plaintiff had been stable with continued treatment on Coumadin);

(3) Plaintiff's history of depression (Plaintiff was stable and being treated with Zoloft);

(4) Plaintiff's history of hypertension, which was controlled with medications; and

5

(5) Plaintiff's history of hyperlipidemia, mild obstructive sleep apnea, and mild obesity. with irritable bowel syndrome. *Id*. at 128-129.

Plaintiff complained of numbness and weakness in her legs, but her balance and gait were routinely described as normal in her medical records. Dkt. 24-2 at 206, 211, 219. A September 7, 2012 record states that Plaintiff reported she had claudation[2] with roughly 100 yards of walking and that if she rested for a short time, it got better. The doctor concluded that "[i]t is not lifestyle limiting" and that "she ha[d] no rest pain or tissue loss." *Id.* at 214.

As she was permitted to do under the Plan, Plaintiff appealed the denial of the LTD benefits (Dkt. 24-2 at 7-14), and on June 23, 2014, the decision was upheld (Dkt. 24-1). The final denial letter explains why, according to Aetna, Plaintiff's medical records and reports did not establish her entitlement to LTD benefits. Dkt. 24-1. For example, while Plaintiff complained that she could not walk or stand for more than a short period of time, there was no objective medical evidence or documentation indicating that she had an inability to walk, stand, or sit (rather, the only notes regarding Plaintiff's walking complaints were Plaintiff's own complaints and not any doctor's finding or conformation).[3] Aetna stated that although Plaintiff had a history of COPD, blood clots, hypertension and had undergone placement of a unibody endovascular device for her aortic dissection, there was no evidence of any subsequent clots, respiratory distress, low blood oxygen levels, abnormal pulmonary function tests or complications from the hypertension that would support continued functional impairment that would have prevented Plaintiff from

---

[2] The term claudation is not defined by the parties, but it means pain and/or cramping in the lower leg due to inadequate blood flow to the muscles.
[3] As explained by Aetna in the denial letter, significant objective findings are defined as "signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed [by a practitioner] **apart from [Plaintiff's] symptoms**." Dkt. 24-10 at 33-34 (emphasis added).

performing sedentary work for twenty-five hours per week.[4] *Id.* at 3. With regard to lung disease, the letter states that "there is no documentation of significant lung disease with low blood oxygen levels, abnormal pulmonary function testing or respiratory distress to preclude sedentary functions." And while Plaintiff had peripheral artery disease and some decreased palpable pulses in her lower extremity, Aetna stated that there was no evidence of complications that would have prevented Plaintiff from performing a sedentary job for a minimum of twenty-five hours per week. *Id*.

In addition, the denial letter noted that although Plaintiff had received a disability determination from the Social Security Administration ("SSA"), the criteria utilized by the SSA for the determination of Social Security disability awards are different from the definition for Total Disability in the Plan. *Id.* at 3. In making its final determination, the review committee "considered all submitted documentation, noted the conclusions of the peer physicians, and determined that there was no significant objective findings to substantiate that a functional impairment exist[ed] that would preclude work in any compensable employment for twenty-five hours per week." *Id.* The Plan's requirement of a significant objective finding to substantiate eligibility for Total Disability benefits (LTD benefits) was not met in Plaintiff's case. *Id.*

Finally, the denial letter noted that the committee recognized that Plaintiff's medical condition did support a functional impairment as of April 1, 2014 (in denying benefits for the time period of April 1, 2014 to April 5, 2014) due to placement of a unibody bifurcated endovascular device. However, Federal Express confirmed that Plaintiff was not on approved Family Medical Leave for her own illness or injury as of April 1, 2014. Thus, under the Plan, no benefits could be

---

[4] Aetna also noted that while Plaintiff made reference to her position at FedEx as a senior business systems advisor not being a sedentary position, under the Plan, the standard is whether Plaintiff could perform *any* occupation for a minimum of twenty-five hours per week and not whether she could perform her prior occupation. *Id.* at 3.

7

authorized for that time period from April 1, 2014 to April 5, 2014 because Plaintiff was not an "Eligible Employee" as defined above.

Plaintiff then filed the instant case on February 24, 2015 and challenges Aetna's denial of LTD benefits.

### III. STANDARD OF REVIEW FOR ERISA CLAIMS

The United States Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), set forth the standard of review that a court must apply when reviewing a denial of ERISA benefits: "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." The Eleventh Circuit has adopted three standards of review for plan interpretations: (1) *de novo*, applicable where the claims administrator is not afforded discretion, (2) arbitrary and capricious, applicable where the plan grants the administrator discretion, and (3) heightened arbitrary and capricious, applicable where the plan grants the administrator discretion and there is a conflict of interest. *See Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1449 (11th Cir. 1997).

More recent cases from the Eleventh Circuit have expanded the *Firestone* test into a six-step analysis to guide district courts in reviewing an administrator's benefits decision:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010) (citing *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004)).

Initially, the Court must evaluate Defendants' decision from the perspective of a *de novo* review and determine whether it is "wrong." *See HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001). A decision is "wrong" if, after reviewing the administrative record that was before the claims administrator at the time that the decision was made, the Court disagrees with Defendant's decision. *See id.* at 993 n.23.

If the Court determines that Defendant's decision was not wrong, the Court's inquiry ends and summary judgment is entered in favor of Defendant. *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004). "A decision is wrong if, after a review of the decision of the administrator from a *de novo* perspective, the court disagrees." *Glenn v. Am. United Life Ins. Co.*, 604 F. Appx. 893, 897 (11th Cir. 2015) (citation omitted).

**IV.   DISCUSSION**

Under the six-step analysis described above, the Court must first assess whether the

9

decision to deny Plaintiff's claim for LTD benefits was "wrong" under the *de novo* standard—that is, whether the Court disagrees with that decision. *Jones v. Federal Express. Corp.*, 2013 WL 6038734, at *3 (M.D. Fla. Nov. 14, 2013). "Review of the … administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Metro Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011). Under the LTD Plan, "Total Disability" is defined as "the complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment . . . to engage in any compensable employment for twenty-five hours per week." Dkt. 24-10 at 41. Thus, given the terms of the LTD Plan, in analyzing whether the decision to deny Plaintiff's claim for long term disability benefits was *de novo* "wrong," the Court must ultimately determine whether the Administrative Record contains significant objective findings showing that Plaintiff has medically-determinable impairments which preclude her from engaging in any compensable employment for twenty-five hours per week.

Defendants argue that they are entitled to summary judgment on Plaintiff's claims because the decision to deny Plaintiff's claim for LTD benefits was not *de novo* wrong. Plaintiff asserts several arguments in support of her conclusion that Aetna's decision was wrong. For the reasons stated below, the Court rejects Plaintiff's arguments and finds that Aetna's decision was not wrong, and as such, Defendants' motion for summary judgment must be granted.

   **A.**  **Plaintiff's Diagnosed Medical Conditions and Subjective Complaints**

It is not disputed that Plaintiff's treating physicians diagnosed her as having a number of medical issues and conditions, such as COPD, blood clots, emphysema, and hypertension. However, the law is clear that a "diagnosis does not by itself establish disability" for purposes of qualifying for a benefits under a LTD plan. *See, e.g., Jordan v. Northrop Grumman Corp. Welfare*

10

*Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2003); *Howard v. Hartford Life & Acc. Ins. Co.*, 929 F. Supp. 2d 1264, 1294 (M.D. Fla. 2013), *aff'd* 563 F. Appx. 658 (11th Cir. 2014) ("Indeed, doctors' diagnoses do not in and of themselves, establish a disability and inability to work."). Further, a claimant's "subjective complaints do not become objective simply because a doctor wrote them down." *Id.* at 1294-95. Thus, Plaintiff cannot carry her burden of proving a Total Disability by only pointing to doctors' notes that included a diagnosis or her own subjective complaints.

It is also undisputed that the independent medical examination performed by Dr. Cosmo and the peer review performed by Dr. Weinsten found that Plaintiff did not have a Total Disability and was able to work twenty-five hours a week. While Plaintiff points to certain doctor's notes that would indicate medical issues different than those described by Dr. Cosmo and Dr. Weinstein, such notes do not contradict the ultimate finding that Plaintiff was not totally disabled and Aetna's decision to deny LTD benefits was not *de novo* wrong. An administrator may reasonably rely on the opinions of consulting experts in order to determine whether medical evidence supports a finding of disability. As for the treating physicians, although an administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," an administrator is not required to give special deference to the opinions of a claimant's treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Ray v. Sun Life & Health Ins. Co.*, 443 Fed. Appx. 529, 533 (11th Cir. 2011) ("No special weight is to be accorded the opinion of a treating physician."). The administrator also has no burden of explanation when it credits reliable evidence that conflicts with a treating physician's evaluation. *Nord*, 538 U.S. at 834. The independent consulting physicians concluded that Plaintiff was capable of working twenty-five hours per week. "It is well-settled law that individuals capable of performing sedentary-to-light work are not totally disabled" under an 'any occupation' ERISA policy." *Richey*

11

*v. Hartford Life & Accident Ins. Co.*, 608 F. Supp. 2d 1306, 1311 (M.D. Fla. 2009) (citation omitted). It is Plaintiff's burden to establish her disability. It is the opinion of the Court that she has not.

Plaintiff argues that she may need to take rest breaks such that she could not engage in part-time employment for twenty-five hours per week. However, Plaintiff's argument fails. *See, e.g., Townsend v. Delta Family-Care Disability & Survivorship Plan*, 295 F. Appx. 971, 977 (11th Cir. 2008) (stating that "the fact that she cannot stand or walk for more than one hour does not prove that [the plaintiff] is unable to perform part-time sedentary work and so does not establish that she is disabled under the Plan"). It is also reasonable for the administrator to have taken into account the fact that Plaintiff was exercising by swimming in finding that she could work twenty-five hours per week. *Harris v. Unum Life Ins. Co. of Am.*, 379 Fed. Appx. 837 (11th Cir. 2010) (affirming the entry of summary judgment in favor of the insurance company and noting that the claimant admitted that he could do laundry, prepare meals, and take afternoon swims); *Kelly v. Prudential Ins. Co. of Am.*, No. cv04-1552-MO, 2006 WL 2037454 (D. Ore. July 18, 2006) (finding that plaintiff could engage in part time work and noting that plaintiff was swimming on a regular basis).

**B.     Standards Imposed by the Plan**

Plaintiff argues that the Plan's requirement that she provide proof of her disability through "significant objective findings" is ambiguous. As discussed above, determinations of a disability require "significant objective findings," which are defined as "signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." The Plan further defines "total disability" as "the complete inability . . . because of a medically-determinable physical or functional impairment . . . to engage in any compensable employment for twenty-five

hours per week." Defendants point out that many courts in this Circuit have dealt with the "significant objective findings" standard and have not found it to be ambiguous. *See, e.g., Oliver v. Aetna Life Ins. Co.*, 613 Fed. Appx. 892 (11th Cir. July 10, 2015); *Jones v. Federal Exp. Corp.*, 984 F. Supp. 2d 1271, 1277 (M.D. Fla. 2013) (agreeing with the administrator that the plaintiff failed to meet the Plan's decision of Total Disability as the plaintiff's pain was unsubstantiated by significant objective findings). It is the Court's determination that the Plan's requirement that Plaintiff provide proof of a Total Disability through significant objective findings is not ambiguous. Plaintiff has failed to provide such proof.

Plaintiff also appears to argue that the Plan cannot condition an award on the existence of significant anatomical physiological abnormalities because doing so is arbitrary and capricious. Dkt. 45 at 5. The Plan requires that a disability be "substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." (emphasis removed). In response, Defendants point to the court's discussion in *Brucks v. Coca-Cola Co.*, 391 F. Supp. 2d 1193, 1205 (N.D. Ga. 2005), wherein the court explained the need for a plan to require objective evidence of the impact of a diagnosed disease, illness, or other condition as being "logical and necessary." The court stated:

> The objective-evidence requirement promotes integrity in the application of the law. It assures claimants are treated fairly and with parity by providing that coverage decisions are not based on varying subjective expressions by claimants of a disease, illness or condition with which they have been diagnosed. That is, it requires claimants to establish that the diagnosed disease, illness or condition results in an actual disability, not just a perceived one. The requirement of objective evidence also promotes integrity by assuring there is corroboration for a claimant's subjective complaints, thus deterring embellished allegations of the effect of the diagnosed malady as well as deterring fraud in the claims process.

*Id.* The Court agrees with this analysis and finds that Plaintiff's argument is not supported by the law. Requiring the existence of "significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms" is not contrary to the law.

      **C.     Denial of LTD Benefits for April 1, 2014 to April 5, 2014**

Finally, Plaintiff challenges the denial of LTD benefits for the time period from April 1, 2014 through April 5, 2014. While Plaintiff was unable to work during this time, as discussed above, Plaintiff was not an Eligible Employee under the Plan. During that time, Plaintiff was on unapproved leave and was therefore not an Eligible Employee. Aetna does not have to insure claimants under the Plan if they are not entitled to such benefits. In this case, Plaintiff was not eligible to receive benefits from April 1, 2014 to April 5, 2014. Aetna's denial of benefits for that time period was not *de novo* wrong.

Under the Eleventh Circuit's six-step analysis, a finding that the claim administrator's decision was not *de novo* wrong ends the analysis in favor of the claim administrator. Based on the information available to the administrator at the time Plaintiff's request for LTD benefits was denied, the Court finds that Aetna's decision to deny LTD benefits was not *de novo* wrong. This finding ends the Court's analysis in favor of Defendants.

      **D.     Conflict of Interest**

Although it is not necessary to address Plaintiff's argument that there was a conflict of interest since the Court finds that the administrator's decision was not *de novo* wrong, the Court will nonetheless address Plaintiff's argument. Despite Plaintiff's attempt to argue otherwise, there is no conflict of interest. As stated above, the Plan gives Aetna, as the Claims Paying

Administrator, "sole and exclusive discretion . . . with respect to all matters…relating to the eligibility of a claimant for benefits under the Plain." Dkt. 24-10 at 3.

This Court discussed the conflict of interest issue with respect to the FedEx LTD Plan in *Braden v. Aetna Life Ins. Co.*, No. 8:13-cv-535-T-30EAJ, 2013 WL 6086460 (M.D. Fla. Nov. 19, 2013), *aff'd*, 597 F. Appx. 562 (11th Cir. 2014). There, the Court stated:

> In this case FedEx establishes and maintains the LTD plan to provide for the funding and payment of LTD benefits for its employees. FedEx funds and maintains a trust fund. FedEx's contributions to the fund are irrevocable and cannot inure to the benefit of FedEx. Further FedEx acts as the . . . Administrator while Aetna acts as the Claims Paying Administrator. Aetna, and not FedEx, makes benefit eligibility determinations for the Plan. Aetna does not fund, administer, or pay claims under the Plan. Therefore, Aetna did not operate under a conflict of interest when it denied Braden's LTD lump sum payment on behalf of FedEx.

*Id.* at *6. Moreover, it is not the defendant's burden to prove that its decision was not tainted by self-interest, rather, it is the plaintiff's burden to show the decision was arbitrary or wrong. *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008). Here, Plaintiff has failed to show that the decision was wrong and there is no conflict of interest.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)   Defendants' Motion for Summary Judgment (Dkt. 37) is **GRANTED**;

(2)   The pretrial conference scheduled for June 8, 2016 is canceled; and

(2)   The Clerk is directed to enter judgment in favor of Defendants, terminate all pending motions, and close this case.

**DONE AND ORDERED** at Tampa, Florida, this 23rd day of May, 2016.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

<u>Copies to</u>:
Counsel of Record